1   BLOOD HURST & O'REARDON, LLP
    TIMOTHY G. BLOOD (149343)
2   LESLIE E. HURST (178432)
    THOMAS J. O'REARDON II (247952)
3   600 B Street, Suite 1550
    San Diego, CA  92101
4   Telephone: 619/338-1100
    619/338-1101 (fax)
5   tblood@bholaw.com
    lhurst@bholaw.com
6   toreardon@bholaw.com

7   Attorneys for Plaintiff

8   [Additional counsel appear on signature page.]

9

10                 UNITED STATES DISTRICT COURT

11              SOUTHERN DISTRICT OF CALIFORNIA

12   DINO RIKOS, On Behalf of Himself, All          Case No.:   10-CV-1974-BEN(CAB)
     Others Similarly Situated and the General
13   Public,                                        CLASS ACTION

14                           Plaintiff,             PLAINTIFF'S OPPOSITION TO
                                                    DEFENDANT'S MOTION TO DISMISS
15            v.                                    FIRST AMENDED CLASS ACTION
                                                    COMPLAINT
16   THE PROCTER & GAMBLE
     COMPANY,                                       Date:       February 7, 2011
17                                                  Time:       10:30 a.m.
                             Defendant.             Judge:      Honorable Roger T. Benitez
18                                                  Courtroom:  3, 4th Floor
                                                    Date Filed: September 21, 2010
19                                                  Trial Date: TBD

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

Page

I.      Introduction .................................................................................................. 1

II.     Statement of the Case.................................................................................. 3

III.    Defendant Has Not Met Its Burden............................................................ 4

IV.     Plaintiff Properly Alleges Claims for False and Deceptive Advertising ........................ 5

V.      The Primary Jurisdiction Doctrine Is Not Properly Invoked Here ................................... 6

VI.     Plaintiff's Economic Injury Provides Article III and UCL Standing............................. 10

        A.      Article III Standing ....................................................................... 10

        B.      UCL Standing ................................................................................ 13

                1.      Plaintiff Lost Money ...................................................... 14

                2.      Plaintiff Adequately Pleads Reliance.................................... 14

                3.      Plaintiff Can Challenge the Advertising Campaign............................. 15

VII.    The Complaint Satisfies Rule 9 ................................................................ 16

        A.      Rule 9 Does Not Apply .................................................................. 16

        B.      Regardless, Plaintiff's Allegations Meet Rule 9b's Particularity ..................... 17

VIII.   Plaintiff States a Claim for Violation of Each Prong of the UCL................................. 18

        A.      "Unfair" and "Fraudulent" Business Practices ................................ 19

        B.      Unlawful Business Practices........................................................... 19

IX.     Plaintiff Provided the CLRA Letter As Required ....................................... 21

X.      Plaintiff States a Claim for Breach of Express Warranty ............................ 22

XI.     P&G'S Premature Arguments On Class Certification Are Irrelevant ........................... 24

XII.    Conclusion ................................................................................................. 24

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4

*Aaronson v. Vital Pharms., Inc.,*
No. 09-CV-1333 W(CAB), 2010 U.S. Dist. LEXIS 14160
5 (S.D. Cal. Feb. 17, 2010) ...........................................................................................9-10

6

*Allen v. Wright,*
468 U.S. 737 (1984)....................................................................................................... 10
7

*Alpharma, Inc. v. Pennfield Oil Co.,*
8 411 F.3d 934 (8th Cir. 2005)............................................................................................ 6

9

*Aron v. U-Haul Co. of California,*
143 Cal. App. 4th 796 (2006)......................................................................................... 14
10

*Bell Atlantic Corp. v. Twombly,*
11 550 U.S. 544 (2007) ......................................................................................................... 4

12

*Bly-Magee v. California,*
236 F.3d 1014 (9th Cir. 2001)....................................................................................... 17
13

14 *Brown v. MCI Worldcom Network Servs., Inc.,*
277 F.3d 1166 (9th Cir. 2002)......................................................................................... 7
15

*Brownfield v. Bayer Corp.,*
16 No. 2:09-cv-00444, 2009 U.S. Dist. LEXIS 63057
(E.D. Cal. July 2, 2009) ................................................................................................. 15
17

18 *Cahill v. Liberty Mut. Ins. Co.,*
80 F.3d 336 (9th Cir. 1996)............................................................................................. 4
19

*Cattie v. Wal-Mart Stores, Inc.,*
20 504 F. Supp. 2d 939 (S.D. Cal. 2007) ........................................................................... 13

21

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,*
22 20 Cal. 4th 163 (1999) .........................................................................................18-19, 21

23 *Chabner v. United of Omaha Life Ins. Co.,*
225 F.3d 1042 (9th Cir. 2000).................................................................................... 20-21
24

*Chacanaca v. The Quaker Oats Company,*
25 No. C 10-0502 RS, 2010 U.S. Dist. LEXIS 111981
(N.D. Cal. Oct. 14, 2010) ....................................................................................... 7, 9, 21
26

27 *Chavez v. Blue Sky Natural Beverage Co.,*
268 F.R.D. 365 (N.D. Cal. 2010)............................................................................... 6-7, 8

28

BLOOD HURST & O'REARDON, LLP

*Clark v. Time Warner Cable,*
   523 F.3d 1110 (9th Cir. 2008)............................................................. 6, 7, 10

*Clothesrigger, Inc. v. GTE Corporation,*
   191 Cal. App. 3d 605 (1987).................................................................. 24

*Conley v. Gibson,*
   355 U.S. 41 (1953)................................................................................ 4

*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy,*
   4 Cal. App. 4th 963 (1992)..................................................................... 18

*Cooper v. Pickett,*
   137 F.3d 616 (9th Cir. 1997)................................................................. 17

*Cortez v. Purolator Air Filtration Products Co.,*
   23 Cal. 4th 163 (2000) ......................................................................... 18

*County of Santa Clara v. Astra United States,*
   588 F.3d 1237 (9th Cir. 2009)............................................................... 6

*Danvers Motor Co. v. Ford Motor Co.,*
   432 F.3d 286 (3rd Cir. 2005) ................................................................ 10

*Davel Communs., Inc. v. Qwest Corp.,*
   460 F.3d 1075 (9th Cir. 2006)............................................................... 6, 7

*Day v. AT&T Corp.,*
   63 Cal. App. 4th 325 (1998)................................................................... 16

*Deitz v. Comcast Corp.,*
   No. C 06-06352 WHA, 2006 U.S. Dist. LEXIS 94333
   (N.D. Cal. Dec. 21, 2006) ...................................................................... 22

*Eminence Capital, LLC v. Aspeon, Inc.,*
   316 F.3d 1048 (9th Cir. 2003)................................................................ 24

*Fireside Bank v. Superior Court,*
   40 Cal. 4th 1069 (2007) ........................................................................ 14

*Fitzpatrick v. General Mills, Inc.,*
   263 F.R.D. 687 (S.D. Fla. 2010)............................................................ 16

*Flast v. Cohen,*
   392 U.S. 83 (1968)................................................................................ 13

*Fraker v. Bayer Corporation,*
   No. CV F 08-1564 AWI GSA, 2009 U.S. Dist. LEXIS 125633
   (E.D. Cal. Oct. 2, 2009) ........................................................................ 5, 6

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Fundin v. Chicago Pneumatic Tool Co.*,
  152 Cal. App. 3d 951 (1984)........................................................................................ 22

*Hall v. Time*,
  158 Cal. App. 4th 847 (2008)....................................................................................... 14

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)...................................................................................... 24

*Hartless v. Clorox Co.*,
  No. 06cv2705, 2007 U.S. Dist. LEXIS 81686
  (S.D. Cal. Nov. 2, 2007) .............................................................................................. 20

*In re BPA Plastic Products Liab. Litig.*,
  No. 08-1967-MD-W-ODS, 2009 U.S. Dist. LEXIS 104451
  (W.D. Mo. Nov. 9, 2009).............................................................................................. 9

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,
  590 F. Supp. 2d 1282 (C.D. Cal. 2008)....................................................................... 8

*In re Steroid Hormone Product Cases*,
  No. Case No. B211968, 2010 Cal. App. LEXIS 154
  (Ct. App. Feb 8, 2010) ................................................................................................. 14

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) .........................................................................................*passim*

*Jenkins v. McKeithen*,
  395 U.S. 411 (1969)..................................................................................................... 13

*Johns v. Bayer Corp.*,
  Case No. 09cv1935, 2010 U.S. Dist. LEXIS 10926
  (S.D. Cal. Feb. 9, 2010) ........................................................................................ 16, 17

*Keilholtz v. Superior Fireplace Co.*,
  No. C 08-00836 CW, 2009 U.S. Dist. LEXIS 30732
  (N.D. Cal. Mar. 30, 2009) ........................................................................................... 22

*Kennedy v. Natural Balance Pet Foods, Inc.*,
  No. 07-cv-1082 H (RBB), 2007 U.S. Dist. LEXIS 57766
  (S.D. Cal. Aug. 7, 2007) .............................................................................................. 22

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) .............................................................................................. 20

*Lavie v. Proctor & Gamble Co.*,
  105 Cal. App. 4th 496 (2003)...................................................................................... 19

*Lockwood v. Conagra Foods, Inc.*,
  597 F. Supp. 2d 1028 (N.D. Cal. 2009) ............................................................... 7, 9, 24

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ................................................................................ 10

*Mathison v. Linnborn,*
    No. SA CV08-0369 DOC(ANx), 2008 U.S. Dist. LEXIS 108511
    (C.D. Cal. Aug. 18, 2008) ............................................................. 10-11, 12

*Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.,*
    588 F. Supp. 2d 1111 (C.D. Cal. 2008) ................................................. 11

*McKell v. Washington Mutual, Inc.,*
    142 Cal. App. 4th 1457 (2006) ........................................................ 18, 19

*Meaunrit v. Pinnacle Foods Group, LLC,*
    No. C 09-04555, 2010 U.S. Dist. LEXIS 43858
    (N.D. Cal. May 5, 2010) ......................................................................... 12

*Morey v. NextFoods, Inc.,*
    No. 10 cv 761 JM(NLS), 2010 U.S. Dist. LEXIS 67990
    (S.D. Cal. June 7, 2010) ................................................................. *passim*

*Morgan v. AT&T Wireless Services Inc.,*
    177 Cal. App. 4th 1235 (2009) ................................................. 15, 21, 22

*Mut. Pharm. Co. v. Watson Pharms., Inc.,*
    No. 09-5421, 2010 U.S. Dist. LEXIS 10542 (D.N.J. Feb. 8, 2010) ................ 8

*Nader v. Allegheny Airlines,*
    426 U.S. 290 (1976) .................................................................................. 8

*National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.,*
    107 Cal. App. 4th 1336 (2003) ................................................................. 5

*Native Am. Arts, Inc. v. Specialty Merch. Corp.,*
    451 F. Supp. 2d 1080 (E.D. Cal. 2006) ................................................. 12

*Natural Resources Defense Council v. Southwest Marine, Inc.,*
    28 F. Supp. 2d 584 (S.D. Cal. 1998) ...................................................... 13

*Olivera v. Am. Home Mortgage Servicing, Inc.,*
    689 F. Supp. 2d 1218 (N.D. Cal. 2010) ................................................. 14

*People ex rel. Lockyer v. Fremont Life Ins. Co.,*
    104 Cal. App. 4th 508 (2002) ................................................................. 19

*Peterson v. Cellco P'ship,*
    164 Cal. App. 4th 1583 (2008) ........................................................ 13, 14

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.,*
    642 F. Supp. 2d 1112 (C.D. Cal. 2009) .................................................... 9

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

*Prata v. Superior Court,*
    91 Cal. App. 4th 1128 (2001 ............................................................ 16

*Ryan v. Chemlawn Corp.,*
    935 F.2d 129 (7th Cir. 1991).......................................................... 9

*Sanchez v. Wal-Mart Stores, Inc.,*
    No. 2:06-cv-2573 JAM KJM, 2008 U.S. Dist. Lexis 70468
    (E.D. Cal. Aug. 6, 2008) ............................................................ 12

*Sanderson v. HCA–The Healthcare Co.,*
    447 F.3d 873 (6th Cir. 2006).......................................................... 17

*Sarausad v. Porter,*
    503 F.3d 822 (9th Cir. 2007).......................................................... 20

*Schnall v. Hertz Corp.,*
    78 Cal. App. 4th 1144 (2000)......................................................... 18

*Smith v. Wells Fargo Bank, N.A.,*
    135 Cal. App. 4th 1463 (2005)........................................................ 20

*State Farm Fire & Casualty Co. v. Superior Court,*
    45 Cal. App. 4th 1093 (1996)......................................................... 20

*Sybersound Records, Inc. v. UAV Corp.,*
    517 F.3d 1137 (9th Cir. 2007)........................................................ 20

*Syntek Semiconductor Co. v. Microchip Tech.,*
    307 F.3d 775 (9th Cir. 2002).......................................................... 10

*Troyk v. Farmers Group, Inc.,*
    171 Cal. App. 4th 1305 (2009)........................................................ 14

*United States v. General Dynamics Corp.,*
    828 F.2d 1356 (9th Cir. 1987)...................................................... 6, 7

*United States v. W. Pac. R.R. Co.,*
    352 U.S. 59 (1956) ................................................................... 10

*Util. Consumers' Action Network v. Sprint Solutions, Inc.,*
    No. C07-cv-2231-W (RJB), 2008 U.S. Dist. LEXIS 34159
    (S.D. Cal. Apr. 25, 2008) ............................................................ 22

*Warshaw v. Xoma Corp.,*
    74 F.3d 955 (9th Cir. 1996).......................................................... 17

*Warth v. Seldin,*
    422 U.S. 490 (1975) .................................................................. 10

00025644

BLOOD HURST & O'REARDON, LLP

*Weinstat v. Dentsply International, Inc.*,
  180 Cal. App. 4th 1213 (2010)..............................................................22, 23

*Wershba v. Apple Computer, Inc.*,
  91 Cal. App. 4th 224 (2001).........................................................................24

*West v. American Tel. & Tel. Co.*,
  311 U.S. 223 (1940)........................................................................................20

*Williams v. Gerber Prods. Co.*,
  523 F.3d 934 (9th Cir. 2008)...........................................................................4

*Williams v. The Purdue Pharma Co.*,
  297 F. Supp. 2d 171 (D.D.C. 2003) ............................................................12

*Wright v. General Mills, Inc.*,
  No. 08-cv1532 L(NLS), 2009 U.S. Dist. LEXIS 90576
  (S.D. Cal. Sept. 30, 2009) .........................................................................7-8

**STATUTES, RULES & REGULATIONS**

21 U.S.C.
  §321...................................................................................................................20
  §343...................................................................................................................20

California Business & Professions Code
  §17200..................................................................................................*passim*
  §17204.......................................................................................................11, 13

California Uniform Commercial Code
  §2313(1)...........................................................................................................22

California Health & Safety Code
  §110765.............................................................................................................19

California Civil Code
  §1750.....................................................................................................*passim*
  §1572...................................................................................................................20
  §1573...................................................................................................................20
  §1709...................................................................................................................20
  §1710...................................................................................................................20
  §1711...................................................................................................................20
  §1770.........................................................................................................13, 20
  §1780(a) .............................................................................................................13
  §1782(a) ...................................................................................................2, 21, 22
  §1782(d) .............................................................................................................21

1

Federal Rules of Civil Procedure

Rule 8 ................................................................................................ 17, 23
Rule 9 .......................................................................................... 16, 17, 18
Rule 9(b)........................................................................................... 17, 20
Rule 12(b)(6)........................................................................................ 4, 6

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

00025644

No. 10-CV-1974-BEN(CAB)

**BLOOD HURST & O'REARDON, LLP**

# I.     Introduction

The Procter & Gamble Company ("P&G") advertises and sells a product known as "Align Digestive Care Supplement." Align is a daily food supplement, which P&G claims is made of a special formulation of "probiotic" bacteria that builds and maintains a healthy digestive system. P&G proclaims on the product label and in its advertisements that these digestive benefits are clinically and scientifically proven. These claims are false and misleading. The Complaint[1] asserts claims for violation of the Consumers Legal Remedies Act ("CLRA") (Civil Code §1750, *et seq.*) and the Unfair Competition Law ("UCL") (Bus. & Prof. Code §17200, *et seq.*) and breach of express warranty created by P&G's advertising.

Defendant asks for a complete dismissal by mischaracterizing plaintiff's Complaint as something that is almost entirely unlike the Complaint itself. First, it contends that plaintiff does not allege false or deceptive advertising, but what it calls a "lack of substantiation" case that either should be dismissed because it improperly shifts the burden of proof onto defendant, or alternatively, referred to the FDA or FTC under the primary jurisdiction doctrine. Plaintiff alleges a false advertising case, namely that P&G's advertised claims of proven digestive health benefits are false and therefore likely to deceive a reasonable consumer. Plaintiff's deceptive advertising claims are properly pled under the UCL and CLRA. Although the notion of a complaint "shifting the burden of proof" is not entirely clear, neither the Complaint nor the allegations do so. As for the primary jurisdiction doctrine, it should not be applied because deceptive conduct is not a technical area in which agencies have greater competence than the courts. Every day courts determine whether conduct is misleading under the statutory tools (the UCL and CLRA) the legislature gave consumers to protect themselves from false advertising. These agencies also cannot provide the same remedies a court can for the claims asserted. Moreover, factually, this case is not a close call – P&G has manufactured utterly baseless claims about its product. Not even the poorly designed studies P&G relies on for substantiation support its advertising claims.

---

[1]     "Complaint" refers to Dkt. No. 9, First Amended Class Action Complaint filed October 27, 2010. All "¶" references are to the Complaint.

1    P&G's last three arguments are nothing but hackneyed filler – lack of standing, lack of

2    specificity and half-hearted attacks about the sufficiency of notice of the CLRA claims.  First,

3    plaintiff has standing because he was exposed to, read, and bought Align in reliance on P&G's

4    representations, which are set forth verbatim in the Complaint, with the Align label reproduced

5    in the Complaint.  The payment of money in reliance on defendant's representations meets the

6    "injury-in-fact" requirement of Article III and the "lost money or property" requirement of the

7    UCL.

8    Second, the 80 paragraph Complaint with exhibits details precisely the representations

9    at issue.  Apparently copying a brief from another case, defendant claims it does not know

10   which representations were relied on.  To know, its lawyers need merely read the Complaint.

11   Further, P&G certainly knows who made the representations (it did), what statements are at

12   issue (they are reproduced in the Complaint), and to whom they were made (plaintiff and other

13   purchasers of Align).   As to plaintiff's allegations of reliance, just last year very similar

14   allegations were deemed sufficient by Judge Miller in another probiotic bacteria false

15   advertising case: *Morey v. NextFoods, Inc.*, No. 10 cv 761 JM(NLS), 2010 U.S. Dist. LEXIS

16   67990 at *4 (S.D. Cal. June 7, 2010).

17   P&G ends its motion with boilerplate attacks on plaintiff's CLRA letter and the breach

18   of warranty claim.  Plaintiff's counsel are well-versed in the CLRA and precisely complied

19   with the notice requirements of Civil Code §1782(a).  As to the warranty claim, P&G gets the

20   law wrong (warranties arise in the context of contract formation in which reliance plays no

21   role), and regardless, plaintiff alleges reliance on the warranties at issue.  P&G's contention

22   that it cannot discern the terms of the warranty is absurd.  The Complaint contains pictures of

23   the Align package that clearly states the warranty.  P&G's motion should be denied.

24   **II.     Statement of the Case**

25   P&G, through a broad based campaign, advertises that Align contains a "Unique,

26   Patented Probiotic" that it calls "Bifantis."   ¶1.   On the Align package, P&G promises that

27   Align will help:

28           • **Build and maintain** a healthy digestive system

BLOOD HURST & O'REARDON, LLP

00025644

2      No. 10-CV-1974-BEN(CAB)

1    • **Restore** your natural digestive balance

2    • **Protect** against occasional digestive upsets

3    ¶1, *see also* ¶2 (quoting advertisements, Align provides a "restored natural balance to your

4    digestive system" and "brings peace to your digestive system"); ¶22 (quoting advertisements,

5    "Align helps to build and maintain your digestive system" and Align "helps to naturally

6    balance your digestive system ... [and] will help your body build and maintain a health

7    digestive system.").

8        P&G also advertises that Align's digestive benefits are "clinically proven" and touts

9    Align with its trademarked phrase "GREAT DIGESTION THROUGH SCIENCE™."  ¶¶2,

10   23, 24; *see also* ¶12 ("Align is a clinically proven option ... grounded in real science ....");

11   ¶23 ("10 years of research went into the formulation of Align").  P&G further advertises that

12   Align is "Recommended by Gastroenterologists" and that there is "**Proof:** Bifantis has been

13   the subject of several clinical studies and has been featured in peer-reviewed journals.  Please

14   see Bifantis.com for full details."  ¶24.  On its website, P&G provides purported scientific

15   information and data, including what it calls "Clinical Data Publications," that it says are proof

16   of the claimed digestive health benefits.  ¶¶35-37.

17       P&G's claims are made through a broad based advertising campaign.  It prominently

18   and conspicuously makes these claims on every Align package, and emphasizes and repeats

19   them through a variety of advertising media including television commercials, point of sale

20   displays, and the Internet.  ¶4.

21       The Complaint also details the reasons why these claims are false.  For example,

22   P&G's own "clinical trial" concluded that there were no statistically significant differences

23   between the control group and the group ingesting the "Bifantis" bacteria, *B. infantis*.  ¶36.  As

24   to the "Clinical Data Publications," neither provides proof (clinical or otherwise) of the Align

25   claims.  Both studies analyzed patients with irritable bowel syndrome (IBS), and not Align's

26   target audience, the general population.  ¶37.  A 2006 study tested endpoints irrelevant to

27   P&G's advertised claims and tested amounts of the bacteria materially different from the

28   amount in a serving of Align (which the authors stressed was important to the study findings).

BLOOD HURST & O'REARDON, LLP

00025644                                                3                    No. 10-CV-1974-BEN(CAB)

1    *Id.*   A 2005 study found that those receiving the Align bacteria did not experience any

2    improvement in the bowel movement markers. *Id.*; *see also* ¶¶38-39 (allegations concerning

3    "preclinical data publications" and "review articles" identified by P&G as purported

4    substantiation for its Align claims).

5         In reality, Align is nothing but sugar-filled capsules injected with a small amount of

6    unremarkable bacteria.  Nonetheless, customers pay $30 for a 28-count package. ¶6  The only

7    purported reason to purchase Align is for the digestive health benefits, which Align does not

8    deliver.  Not surprisingly, plaintiff Rikos read the claims on the Align label, believed they

9    were true, and purchased Align in reliance on P&G's advertised claims, expecting that he was

10   paying for a product that had proven digestive health benefits. ¶10.

11   **III.    Defendant Has Not Met Its Burden**

12        P&G argues that the Complaint should be dismissed in its entirety.  Only under

13   "extraordinary" circumstances is Rule 12(b)(6) dismissal proper, such as where "plaintiff can

14   prove no set of facts entitling [him] to relief." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,

15   338 (9th Cir. 1996); *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 939 (9th Cir. 2008)

16   (reversing order dismissing UCL, CLRA and express warranty false advertising action and

17   noting the "rare situation" where dismissal of such a case is appropriate).[2]  The Federal Rules

18   require only that plaintiff provide "'a short and plain statement of the claim' that will give the

19   defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

20   *Conley v. Gibson*, 355 U.S. 41, 47 (1953) (quoting Rule 8(a)); *Bell Atlantic Corp. v. Twombly*,

21   550 U.S. 544, 555 (2007).

22   **IV.    Plaintiff Properly Alleges Claims for False and Deceptive Advertising**

23        P&G casts plaintiff's case as something it is not, and then contends that the re-defined

24   case must be dismissed.  In an odd argument, P&G asserts that plaintiff's Complaint shifts the

25   burden of proof to defendant, requiring ***P&G*** to prove that its advertisements are true and

26   scientifically substantiated.  Instead, says P&G, in a real false advertising case, plaintiff must

---

2    Unless otherwise stated, emphasis is added and citations and internal quotations are
omitted.

BLOOD HURST & O'REARDON, LLP

1   plead and prove that the advertising statements are false or misleading, *i.e.*, that its

2   advertisements are likely to deceive a reasonable consumer. Def's Mem. at 5-8.[3]

3       That is exactly what plaintiff pleads and what he will prove at trial. *See, e.g.*, ¶1

4   (P&G's "representations are false, misleading and reasonably likely to deceive the public.").

5   *See also*, ¶¶56-57, 65-74. P&G advertises that Align is clinically proven to provide certain

6   defined digestive benefits. ¶¶1, 2, 12, 13, 24. At trial (not on a motion to dismiss) plaintiff

7   will present evidence (*e.g.*, testing, scientific literature, expert testimony, surveys and similar

8   evidence) that Align is not scientifically or clinically proven to do anything and does not

9   deliver the promised digestive benefits.

10       The two cases cited by P&G do not apply. In *National Council Against Health Fraud,*

11   *Inc. v. King Bio Pharmaceuticals, Inc.*, 107 Cal. App. 4th 1336 (2003), plaintiff NCAHF

12   alleged that King Bio made false advertising claims concerning the effectiveness of 50 of its

13   homeopathic products. However, at trial, the NCAHF "presented no evidence concerning the

14   efficacy of King Bio's products." *Id.* at 1347. NCAHF contended that it should not have to

15   present any evidence that the advertisements were false or deceptive, and instead, the burden

16   of proof should be shifted to King Bio to prove that its remedies were effective as claimed.

17   The court disagreed, making the unremarkable conclusion that a plaintiff at trial must prove

18   the allegations of the complaint, which may be established by any variety of evidence,

19   including "testing, scientific literature, or anecdotal evidence." *Id.* at 1348.

20       *Fraker v. Bayer Corporation*, No. CV F 08-1564 AWI GSA, 2009 U.S. Dist. LEXIS

21   125633 (E.D. Cal. Oct. 2, 2009), is even further afield. In *Fraker*, the FTC issued a cease and

22   desist order directing Bayer to halt advertising until it provided substantiation for its claims.

23   Bayer violated the order, the government sued, and the case settled, resulting in a consent

24   decree. *Id.* at *2-*4. Plaintiff Fraker attempted to use the cease and desist order and consent

25   decree as the basis of a false advertising case. Fraker's complaint was "lifted directly from the

26

27   [3]   "Def's Mem." refers to Defendant The Procter & Gamble Company's Memorandum of

28   Points and Authorities in Support of Motion to Dismiss First Amended Class Action
    Complaint.

BLOOD HURST & O'REARDON, LLP

1  prior [FTC] actions" without "any independent verification of the contents." *Id.* at *12. The

2  court struck the allegations lacking independent verification, leaving too few allegations

3  sufficient to state a claim. *Id.* at *13. Even though the complaint was based entirely on

4  Bayer's purported failure to provide the FTC with claim substantiation, and contained false

5  advertising allegations, leave to amend was granted.

6  Here, the only things in the Complaint that have been copied are defendant's

7  advertisements. The advertised claims are false and not clinically proven.

8  **V.      The Primary Jurisdiction Doctrine Is Not Properly Invoked Here**

9  The doctrine of primary jurisdiction provides that, "[w]hen there is a basis for judicial

10  action, independent of agency proceedings, courts may route the threshold decision as to

11  certain issues to the agency charged with primary responsibility for governmental supervision

12  or control of the particular industry or activity involved." *United States v. General Dynamics*

13  *Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987). Primary jurisdiction "applies in a limited set of

14  circumstances," *Clark v. Time Warner Cable,* 523 F.3d 1110, 1114 (9th Cir. 2008), and "is to

15  be invoked sparingly, as it often results in added expense and delay." *Alpharma, Inc. v.*

16  *Pennfield Oil Co.*, 411 F.3d 934, 938 (8th Cir. 2005).

17  At the motion to dismiss stage, when deciding whether to defer jurisdiction, the courts

18  must "apply a standard derived from Rule 12(b)(6) jurisprudence: whether the complaint

19  plausibly asserts a claim that would *not* implicate the doctrine." *County of Santa Clara v.*

20  *Astra United States*, 588 F.3d 1237, 1252 (9th Cir. 2009) (declining to invoke primary

21  jurisdiction where the action could "plausibly be adjudicated" without agency's expertise).

22  Where "the allegations of the complaint do not necessarily require the doctrine's applicability,

23  then the primary jurisdiction doctrine may not be applied on a motion to dismiss...." *Davel*

24  *Communs., Inc. v. Qwest Corp.*, 460 F.3d 1075, 1088 (9th Cir. 2006).

25  To apply the doctrine, "the court must determine whether the claim 'requires resolution

26  of an issue of first impression, or of a particularly complicated issue that Congress has

27  committed to a regulatory agency' and 'if protection of the integrity of a regulatory scheme

28  dictates preliminary resort to the agency which administers the scheme.'" *Chavez v. Blue Sky*

BLOOD HURST & O'REARDON, LLP

00025644

1  *Natural Beverage Co.*, 268 F.R.D. 365, 374 (N.D. Cal. 2010) (citing *Clark*, 523 F.3d at 1114).

2  The doctrine "is not designed to secure expert advice from agencies every time a court is

3  presented with an issue conceivably within the agency's ambit" but instead "is to be used only

4  if a claim requires resolution of an issue of first impression, or of a particularly complicated

5  issue that Congress has committed to a regulatory agency." *Clark*, 523 F.3d at 1114; *see also*

6  *Brown v. MCI Worldcom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002) (same);

7  *Davel*, 460 F.3d at 1086 (the doctrine "does not require that all claims within an agency's

8  purview be decided by the agency"); *United States v. General Dynamics*, 828 F.2d at 1363

9  ("While it is certainly true that the competence of an agency to pass on an issue is a necessary

10  condition to the application of the doctrine, competence alone is not sufficient."). The primary

11  jurisdiction doctrine is not properly invoked here.

12      First, the court does not need an agency's expertise to resolve plaintiff's UCL, CLRA

13  or warranty claims. These claims depend upon a determination that P&G's advertisements are

14  likely to deceive a reasonable consumer and that P&G breached its express warranties by

15  failing to provide the product as promised. "[T]his is not a technical area in which the FDA

16  has greater technical expertise than the courts – every day courts decide whether conduct is

17  misleading." *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009)

18  (declining to apply primary jurisdiction doctrine in false advertising case concerning definition

19  and deceptive use of the term "natural"). Similarly, in *Chacanaca v. The Quaker Oats*

20  *Company*, No. C 10-0502 RS, 2010 U.S. Dist. LEXIS 111981 at * 33 (N.D. Cal. Oct. 14,

21  2010), plaintiffs advanced "a relatively straightforward claim: they assert that defendant has

22  violated FDA regulations and marketed a product that could mislead a reasonable consumer."

23  "[T]his is a question 'courts are well-equipped to handle.'" *Id. See also Wright v. General*

24  *Mills, Inc.*, No. 08-cv1532 L(NLS), 2009 U.S. Dist. LEXIS 90576, at *9 (S.D. Cal. Sept. 30,

25  2009) (where Judge Lorenz concluded that UCL and CLRA claims concerning advertising

26  with the term "natural" "is not an issue of first impression, does not require technical

27  definition within the special competence of the FDA, and is not a particularly complicated

28

BLOOD HURST & O'REARDON, LLP

1    issue outside the ability of the Court to consider and decide."). [4]   Here, it is within the court's

2    competence to review the evidence presented, including consumer surveys, anecdotal

3    evidence, scientific literature and expert testimony, and determine if P&G's advertised claim

4    of Align's health benefits and clinical proof for the benefits was false likely to deceive a

5    reasonable consumer.

6         Second, the court should reject defendant's argument that "uniform administration with

7    respect to dietary supplements" will be undermined if plaintiff is permitted to "impose a

8    substantiation standard different from that required by the FTC or FDA." Def's Mem. at 11.

9    Plaintiff's case is based on the deceptive nature, as viewed by a reasonable consumer, of

10   P&G's advertised benefits of Align and its claim of clinical proof for the health benefits.

11   Proof of P&G's deceptive advertisements does not depend upon P&G's violation of, or

12   compliance with, the FDA's or FTC's regulations or guidelines, or threaten uniform

13   application of the guidelines by the agencies. Instead, it depends on whether P&G violated

14   California's consumer protection laws. Considering this very question in *Chavez*, the court

15   stated: "Plaintiff's state law [false advertising] claims would not, however, threaten the

16   integrity of the FDA's regulatory scheme governing misbranded food and do not implicate

17   technical and policy questions that are reserved for the FDA .... [T]he FDA has traditionally

18   regarded state law as an additional layer of consumer protection that complements FDA

19   regulation." 268 F.R.D. at 375. Here, as well, federal regulations will not be disrupted or

20   undermined by the enforcement of California's consumer protection statutes and warranty law.

21   _____

22   [4]    Also declining to apply the primary jurisdiction doctrine, in *In re Epogen & Aranesp*
     *Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1292 (C.D. Cal. 2008), the

23   court reasoned: "To hold contrary would mean that the FDA, not the courts, would be
     responsible for resolving all questions of whether a statement made in connection with

24   prescription drug advertising was false, misleading, or omitted a material fact. This court
     would not extend the FDA's primary jurisdiction so far." *See also Nader v. Allegheny*

25   *Airlines*, 426 U.S. 290, 304 (1976) (fraudulent omission claim against airline carrier was not
     within primary jurisdiction of FAA because the standards to be applied in an action for
     fraudulent misrepresentation are within the conventional competence of the courts); *Mut.*

26   *Pharm. Co. v. Watson Pharms., Inc.*, No. 09-5421, 2010 U.S. Dist. LEXIS 10542, at *16

27   (D.N.J. Feb. 8, 2010) ("the complaint alleges that defendants ... made false and misleading
     representations on their product inserts and labels. Whether these statements are false and

28   misleading to relevant consumers is not a matter reserved for the FDA, but a matter that falls
     within the jurisdiction of this Court.").

BLOOD HURST & O'REARDON, LLP

1    Third, courts have declined to apply the primary jurisdiction doctrine when the party

2    seeking agency referral does not provide evidence that "the FDA has actually taken any

3    interest in investigating the claims or issues presented here." *Pom Wonderful LLC v. Ocean*

4    *Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1123 (C.D. Cal. 2009).   Likewise, in

5    *Lockwood*, the court did not refer the matter to the FDA because the agency had indicated that

6    the issue was not a priority to it and because the FDA has limited resources.  597 F. Supp. 2d

7    at 1035.  P&G does not assert, let alone provide evidence, that the FDA or FTC has made a

8    priority any of the claims covered by this lawsuit.

9    Fourth, courts decline to apply the doctrine when the case is based on state law or legal

10   questions that would not be finally resolved by the agency.  *Pom Wonderful*, 642 F. Supp. 2d

11   at 1123 (plaintiff's state law false advertising claims "would not necessarily be resolved in the

12   event of an FDA ruling"); *Lockwood*, 597 F. Supp. 2d at 1035 ("even if the FDA were to

13   formally define 'natural,' federal law would not dispose of plaintiff's state law [§17200]

14   claims").  Because the FDA and FTC cannot provide the monetary relief plaintiff seeks, the

15   court should decline to invoke primary jurisdiction.  *See Ryan v. Chemlawn Corp.*, 935 F.2d

16   129, 131 (7th Cir. 1991) ("[A]s both parties agree that the EPA cannot provide the plaintiff

17   with any form of compensatory or punitive damages, we fail to understand what role the EPA

18   can play in this suit ...."); *In re BPA Plastic Products Liab. Litig.*, No. 08-1967-MD-W-ODS,

19   2009 U.S. Dist. LEXIS 104451, at \*31-\*32 (W.D. Mo. Nov. 9, 2009) ("With respect to the

20   type of relief requested, Plaintiffs seek only monetary remedies, which the FDA cannot

21   provide.  This factor further supports denial of Defendants' claim that the FDA has primary

22   jurisdiction over Plaintiffs' claims."); *Chacanaca*, 2010 U.S. Dist. LEXIS at \*34 ("it is unclear

23   what form of relief plaintiffs might hope to obtain from referral to the Agency").

24   As the above case law shows, California district courts, with few exceptions, have

25   declined a primary jurisdiction referral in UCL and CLRA cases concerning deceptive labeling

26   of food products.  In contrast, P&G cites just one product labeling case involving a primary

27   jurisdiction referral.  That case, however, concerned "whether Redline and/or its ingredients

28   should be approved as safe ..., these issues are best suited for the FDA."  *Aaronson v. Vital*

BLOOD HURST & O'REARDON, LLP

00025644

9

No. 10-CV-1974-BEN(CAB)

1    *Pharms., Inc.*, No. 09-CV-1333 W(CAB), 2010 U.S. Dist. LEXIS 14160 at *7 (S.D. Cal. Feb.

2    17, 2010).   Further, only the "safety" determination was referred; plaintiff's claims for

3    fraudulent concealment and breach of warranty were not included in the primary jurisdiction

4    referral.[5]

5    **VI.    Plaintiff's Economic Injury Provides Article III and UCL Standing**

6        **A.    Article III Standing**

7            The essence of standing is whether plaintiff is entitled to have his day in Court. *Warth*

8    *v. Seldin*, 422 U.S. 490, 498 (1975).   The Article III standing requirements are met by

9    allegations of: (1) "injury in fact"; (2) traceability; and (3) redressability. *Allen v. Wright*, 468

10   U.S. 737, 751 (1984).   "Injury in fact" means that plaintiff has suffered invasion of a legally

11   protected interest which is concrete and particularized, and is actual and imminent, not

12   conjectural or hypothetical.   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

13   "Monetary harm is a classic form of injury-in-fact." *Danvers Motor Co. v. Ford Motor Co.*,

14   432 F.3d 286, 293 (3rd Cir. 2005).   On a motion to dismiss, "general factual allegations of

15   injury resulting from the defendants' conduct may suffice." *Lujan*, 504 U.S. at 561.

16           Mr. Rikos, as a purchaser of Align, alleges "injury in fact" in the form of economic

17   injury.   He purchased Align in reliance on P&G's claims that the product provides defined

18   health benefits, when these advertisements were false and deceptive.   ¶10.   "There can be no

19   doubt that [] financial harm counts as injury-in-fact." *Danvers*, 432 F.3d at 292; *Mathison v.*

20   *Linnborn*, No. SA CV08-0369 DOC(ANx), 2008 U.S. Dist. LEXIS 108511, at *9 (C.D. Cal.

21

22

    ---

    [5]     The other cases cited by P&G are inapposite. See *United States v. W. Pac. R.R. Co.*,
23   352 U.S. 59, 68 (1956) (the proper tariff for incendiary bombs should be determined by the
    Interstate Commerce Commission); *Syntek Semiconductor Co. v. Microchip Tech.*, 307 F.3d
24   775, 782 (9th Cir. 2002) (issue of first impression whether a federal statute applied to new
    technology was referred to the Register of Copyrights); *Clark*, 523 F.3d at 1115-16 (issue of
25   first impression where FCC was already actively considering how it would regulate emerging
    technology of VoIP services).
26
             P&G is also wrong that application of the doctrine results in dismissal without
27   prejudice. Where, as here, a dismissal would impact statute of limitations and the class period
    of plaintiff's claims, application of the primary jurisdiction doctrine results in a stay, not
28   dismissal. *Syntek*, 307 F.3d at 782.

BLOOD HURST & O'REARDON, LLP

1   Aug. 18, 2008) ("a plaintiff might be injured by purchasing a good that was not as represented

2   due to a latent defect – *i.e.*, a reduction in value.").

3        First, P&G makes the patently false argument that "[t]here are no factual allegations in

4   the FAC of ... economic harm." Def's Mem. at 13.  Plaintiff's "purchase" of the product is

5   economic harm.  ¶10.

6        Second, P&G contends that economic injury does not confer Article III standing,

7   stating: "The fact that a plaintiff purchased a product does not constitute a cognizable injury-

8   in-fact." Def's Mem. at 14.  Again, P&G is flat wrong.  The injury here is that plaintiff paid

9   for a product that was not provided as advertised.  Even when considered under the stricter

10  standing requirements of California's unfair competition and false advertising laws (discussed

11  further below),[6] standing is conferred by the economic harm of purchasing the product in

12  reliance on the false advertisement.  *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009).   In

13  *Tobacco II*, the misconduct concerned deceptive advertisements about the addictive nature of

14  nicotine and the relationship between tobacco use and disease.  *Id.* at 306.  Standing was

15  satisfied with allegations that plaintiffs' reliance on the deceptive advertisements was a cause

16  of the plaintiffs purchasing and using the cigarettes. *Id.* at 310, 327-28.

17       Other California courts agree.  In *Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.*, 588

18  F. Supp. 2d 1111, 1117 (C.D. Cal. 2008), defendants moved to dismiss plaintiffs' complaint,

19  arguing that failure to allege that any children actually ingested lead or were physically injured

20  by ingestion, was a failure to properly allege Article III standing.  *Id.* at 1116, n. 6.   The

21  Central District found "Plaintiffs also properly allege damages for the purchase price of the

22  toys that allegedly were defective and not fit for their represented use.  Plaintiffs' claim is

23  straightforward – they allege that they purchased toys that were unsafe and unusable and

24  should get their money back." *Id.* at 1117.  Likewise, in *Morey*, 2010 U.S. Dist. LEXIS 67990

25  at *5, the court found: "Plaintiff's allegations that she purchased GoodBelly products in

26

27  _____
     [6]     The stricter standing requirements of the UCL, Bus. & Prof. §17200, *et seq.*, require
28  not only Article III-type "injury in fact" but also "lost money or property." Bus. & Prof. Code
     §17204.

BLOOD HURST & O'REARDON, LLP

1  reliance on NextFood's advertising is sufficient to create standing under both federal and

2  California law."[7]

3        The three cases cited by P&G do not help it. *See Native Am. Arts, Inc. v. Specialty

4  Merch. Corp.*, 451 F. Supp. 2d 1080, 1082 (E.D. Cal. 2006) (the court acknowledged that

5  allegations of lost sales, lower prices, or even loss of goodwill or reputation would be

6  sufficient to meet the injury-in-fact requirement); *Meaunrit v. Pinnacle Foods Group, LLC*,

7  No. C 09-04555, 2010 U.S. Dist. LEXIS 43858 at *7 (N.D. Cal. May 5, 2010) (plaintiffs'

8  "speculative, hypothetical injury is not sufficient to support Article III standing"); *Williams v.

9  The Purdue Pharma Co.*, 297 F. Supp. 2d 171, 177 (D.D.C. 2003) (plaintiff did not allege he

10  saw or relied on the alleged false ads).  Here, plaintiff paid money in reliance upon P&G's

11  deceptive advertising and has standing before this Court to adjudicate his claims.

12        Finally, P&G argues that plaintiff lacks standing to seek injunctive relief.  It contends

13  that since plaintiff now knows that the digestive health benefit claims of Align are false he will

14  not purchase Align again, and therefore lacks the requisite "likelihood of future injury." Def's

15  Mem. at 15.   According to P&G, even though CAFA provides federal jurisdiction over

16  plaintiff's false advertising claims, and even though injunctive relief is the primary form of

17  relief provided by California's consumer protection statutes,[8] plaintiff (indeed any plaintiff in

18  any false advertising case), cannot obtain the injunctive relief specifically provided for under

19  the UCL and CLRA.

[7]   *See also Mathison*, 2008 U.S. Dist. LEXIS 108511, at *9-*10 ("[A] plaintiff might be injured by purchasing a good that was not as represented due to a latent defect – *i.e.*, a reduction in value" [plaintiffs] "would certainly have a valid claim [] [if they could point to] financial injury – including paying for a defective good." *id.* at *13 n.1); *Sanchez v. Wal-Mart Stores, Inc.*, No. 2:06-cv-2573 JAM KJM, 2008 U.S. Dist. Lexis 70468, *11 (E.D. Cal. Aug. 6, 2008) ("While Sanchez concedes that she has not suffered physical injury arising out of the use of her stroller, she asserts that she suffered economic injury as a result of purchasing a defective stroller.... This is sufficient to satisfy the standing requirement of concrete injury in fact....").
[8]   *See Tobacco II*, 46 Cal. 4th at 319-20 ("the primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction ... [t]he purpose of such relief, in the context of a UCL action, is to protect California's consumers against unfair business practices by stopping such practices in their tracks").

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1    This narrow construction of standing should be rejected.  As stated by the Southern

2  District in *Natural Resources Defense Council v. Southwest Marine, Inc.*, 28 F. Supp. 2d 584,

3  586 (S.D. Cal. 1998): "A party either has standing for the purposes of the 'case or controversy'

4  requirement of Art. III or it does not.  That simple inquiry regarding a party's injuries and their

5  justiciability for purposes of the case – though fraught with difficulties – *is not further*

6  *extended into, and made more troublesome by, a microscopic analysis of standing for each*

7  *remedy sought.*") (citing *Flast v. Cohen*, 392 U.S. 83, 99-100 (1968) and *Jenkins v.*

8  *McKeithen*, 395 U.S. 411, 423 (1969) ("the concept of standing focuses on the party seeking

9  relief, rather than on the precise nature of the relief sought.")).  Plaintiff has standing to litigate

10  the case and controversy that is before the court.[9]

11    **B.    UCL Standing**

12    Standing under the UCL requires that the named plaintiff has suffered injury in fact

13  and has "lost money or property as a result of" defendant's unfair business practices.  Bus. &

14  Prof. Code §17204.  Similarly, though it is not construed as standing requirement, under the

15  CLRA an action may be brought by "[a]ny consumer who suffers any damage as a result of the

16  use or employment by any person of a method, act, or practice declared to be unlawful by

17  Section 1770."  Civil Code §1780(a).

18    **1.    Plaintiff Lost Money**

19    Even though plaintiff paid money in reliance on P&G's false advertising, P&G argues

20  that plaintiff's payment of money is not "lost money" for UCL standing if he received the

21  "benefit of the bargain," *i.e.*, if he got what he paid for.  Def's Mem. at 16 (citing *Peterson v.*

22  *Cellco P'ship*, 164 Cal. App. 4th 1583 (2008) and *Hall v. Time,* 158 Cal. App. 4th 847, 855

23  (2008)).  First, the "benefit of the bargain" reasoning has been criticized and rejected by other

24  _____

25  [9]    The preclusion of injunctive relief in false advertising cases is not supported by the case that defendant primarily relies upon: *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939

26  (S.D. Cal. 2007).  In *Cattie* the plaintiff did not plead reliance on the false advertisements at issue.  *Id.* at 946.  After ruling on reliance, which was dispositive of all claims, the court raised

27  the issue of plaintiff's separate standing to pursue injunctive relief *sua sponte*.  The court did not dismiss the claim for injunctive relief, but permitted the parties to file points and

28  authorities on the issue.  *Id.* at 951-52.  The case was dismissed, however, before briefing by the parties and the standing issue was never decided by the court.

1   courts in determining UCL standing. *See Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th

2   1305, 1348, fn. 30 (2009) (rejecting *Peterson's* and *Hall's* "benefit of the bargain" reasoning);

3   *see also Aron v. U-Haul Co. of California,* 143 Cal. App. 4th 796, 802-03 (2006) (payment of

4   money due to the defendant's acts of unfair competition establish UCL standing); *Morey*, 2010

5   U.S. Dist. LEXIS 67990 at *5 ("Plaintiff's allegations that she purchased GoodBelly products

6   in reliance on NextFood's advertising is sufficient to create standing under [the UCL]."

7        Second **even *if*** the faulty "benefit of the bargain" reasoning were applied, plaintiff did

8   not receive the product he paid for. He paid for a product that would provide proven digestive

9   health benefits, but did not get it. *See, e.g.*, ¶79 (defendant acted improperly "by not providing

10  the Align product which could provide the benefits described above"); *contrast Peterson*, 164

11  Cal. App. 4th at 1591 ("[Plaintiffs] received the benefit of their bargain, having obtained the

12  bargained for insurance at the bargained for price").

13         **2.   Plaintiff Adequately Pleads Reliance**

14       Defendant acknowledges Mr. Rikos' allegations that he read and relied on the

15  statements on the Align label prior to his purchase. *See* ¶10. It nonetheless contends (without

16  any supporting authority) that these allegations are insufficient because plaintiff must identify

17  the "specific representations on the Align label."[10] Def's Mem. at 16.

18       Defendant is wrong. Mr. Rikos need not "plead or prove an unrealistic degree of

19  specificity that the plaintiff relied on particular advertisements or statements "when the unfair

20  practice is a fraudulent advertising campaign" and need not "demonstrate individualized

21  reliance on specific misrepresentations to satisfy the reliance requirement." *Tobacco II*, 46

22

23  [10]   Named plaintiff reliance is only required for UCL "fraudulent" prong claims. *Tobacco*
24  *II*, 46 Cal. 4th at 326, fn. 17 ("There are doubtless many types of unfair business practices in
    which the concept of reliance, as discussed here, has no application."); *Fireside Bank v.*
25  *Superior Court*, 40 Cal. 4th 1069, 1090 (2007) (applying different causation standard to
    unlawful prong); *In re Steroid Hormone Product Cases*, No. B211968, 2010 Cal. App. LEXIS
26  154 at *3 (Ct. App. Feb 8, 2010) ("where the UCL claim is based upon the unlawful prong of
    the UCL" there is "no issue regarding reliance"); *Olivera v. Am. Home Mortgage Servicing,*
27  *Inc.*, 689 F. Supp. 2d 1218, 1224 (N.D. Cal. 2010) ("For claims based on the 'unfair' or
    'unlawful' prongs of the UCL claim, courts have held that the plaintiff ... may allege
28  'causation more generally.'"). P&G does not bother to distinguish the various causation
    standards used for the different UCL prongs.

BLOOD HURST & O'REARDON, LLP

00025644

1 | Cal. 4th at 327-328. *See also Morgan v. AT&T Wireless Services Inc.*, 177 Cal. App. 4th

2 | 1235, 1258 (2009) ("Plaintiff is not required, as AT&T asserts, to plead the specific

3 | advertisements or representations they relied upon in making their decision to purchase the

4 | [product]."). Indeed, very similar reliance allegations have been found sufficient. In *Morey*,

5 | plaintiff alleged she "'was exposed to and saw NextFood's claims by reading the product

6 | label, purchased GoodBelly products in reliance on these claims, and suffered injury in fact

7 | and lost money as result of the unfair competition.'" 2010 U.S. Dist. LEXIS 67990 at *4.

8 | Judge Miller found that though "Plaintiff's allegations regarding reliance and injury are indeed

9 | 'short and plain,' ... they nonetheless give NextFoods sufficient notice of the claim" and lay

10 | "out the required causal connection between 'reading the product label' and purchasing the

11 | product 'in reliance on these claims.'" *Id.*[11]

### 3. Plaintiff Can Challenge the Advertising Campaign

13 | P&G next contends that plaintiff's standing to challenge its false advertising is limited

14 | to only the advertisements made on its label; that plaintiff should not be permitted to challenge

15 | the same digestive health benefit claims (though the claims are the same) that it made in other

16 | forms of advertisements. Def's Mem. at 17. Again, this exact argument was recently

17 | considered and rejected. In *Morey*, defendant argued that "Plaintiff cannot challenge

18 | advertisements that she was not exposed to and therefore could not have relied upon in

19 | purchasing GoodBelly products." At the pleading stage, however, a plaintiff is 'not required

20 | to plead with an unrealistic degree of specificity that the plaintiff relied on particular

21 | advertisements or statements.'" 2010 U.S. Dist. LEXIS 67990 at *5 (citing *Tobacco II*, 46

22 | Cal. 4th at 328). Under defendant's formulation, every class action would need a

23 | representative for every type of advertisement – one for radio, one for television, one for

24 | labeling, one for the internet, one for newspaper ads, etc., despite the fact that, as Mr. Rikos

25 | alleges here, all of the advertisements carried the same message and misrepresentations.

---

[11] Nothing in *Brownfield v. Bayer Corp.*, No. 2:09-cv-00444, 2009 U.S. Dist. LEXIS 63057, at *11 (E.D. Cal. July 2, 2009), cited by defendant requires a different conclusion because in Brownfield, plaintiffs did not allege they had ever "viewed" either of those two television commercials at issue.

BLOOD HURST & O'REARDON, LLP

No. 10-CV-1974-BEN(CAB)

1    Plaintiff challenges P&G's advertising for Align that he was exposed to and harmed by. That

2    gives him standing.

3    Or put another way, the Court should reject P&G's attempt to carve out certain

4    advertisements from the well-pled class action Complaint under the guise of "standing." For

5    example, in *Prata v. Superior Court*, 91 Cal. App. 4th 1128, 1143 (2001), the court

6    emphasized that to establish a violation of the UCL, the issue is "whether the program as a

7    whole was likely to mislead because it advertised financing" in a deceptive manner.  As such,

8    the trial court improperly focused on a misconceived need to examine each advertisement and

9    transaction. *Id.* at 1143.  *See also Fitzpatrick v. General Mills, Inc.*, 263 F.R.D. 687, 694 (S.D.

10   Fla. 2010) (a plaintiff seeking to prove the deceptiveness of an advertisements "may rely on

11   any evidence concerning that message, including advertisements to which he or she was not

12   personally exposed.") (review granted by the Eleventh Circuit on unrelated issues).

13   Defendant's citation to *Johns v. Bayer Corp.*, No. 09cv1935, 2010 U.S. Dist. LEXIS

14   10926 (S.D. Cal. Feb. 9, 2010), does not help it.  In *Johns*, plaintiff only alleged that he was

15   the "direct object of some aspect of" Bayer's advertising.  Moreover, plaintiff challenged two

16   products, one of which he did not purchase or consider purchasing and saw no absolutely no

17   advertisements for that product. *Id.* *13.

18   **VII.   The Complaint Satisfies Rule 9**

19   **A.    Rule 9 Does Not Apply**

20   Mr. Rikos' UCL and CLRA false advertising claims are "distinct from common law

21   fraud."  *Tobacco II*, 46 Cal. 4th at 312.  "A [common law] fraudulent deception must be

22   actually false, known to be false by the perpetrator and reasonably relied upon by a victim who

23   incurs damages.  None of these elements are required to state a claim … under the UCL." *Id.*;

24   *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332 (1998).  This distinction reflects the UCL's

25   focus on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's

26   larger purpose of protecting the general public against unscrupulous business practices.

27   *Tobacco II*, 46 Cal. 4th at 312.  For example, in *Johns*, 2010 U.S. Dist. LEXIS 10926 at *13-

28   *14, the court held that false advertising claims under the UCL and CLRA were not "grounded

BLOOD HURST & O'REARDON, LLP

00025644

16

No. 10-CV-1974-BEN(CAB)

1    in fraud" and therefore, Rule 9 did not apply because plaintiff did not allege *all* of the elements

2    of fraud, namely, knowledge of falsity or intent to induce reliance.  The court declined to

3    revisit its previous ruling on the Rule 9 issue in a subsequent motion to dismiss.  *Johns*, 2010

4    U.S. Dist. LEXIS 62804, *10, fn. 2.

5         Mr. Rikos does not allege because he does not have to allege intent by defendant to

6    deceive him or his fellow class members.  Nor does plaintiff allege class wide reliance or

7    damages in his UCL claim as these are not elements under the UCL.  Moreover, the claims

8    under the UCL's "unfair" prong are not grounded in fraud.  Rule 9 does not apply.

9              **B.      Regardless, Plaintiff's Allegations Meet Rule 9b's Particularity**

10         Even if Rule 9(b) is applied, the particularity requirement must be read in harmony

11   with Rule 8's requirement of a "short and plain" statement of the claim. *Sanderson v. HCA–*

12   *The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006).   Rule 9(b) only requires that

13   allegations regarding the circumstances constituting the fraud be "specific enough to give

14   defendants notice of the particular misconduct which is alleged to constitute the fraud charged

15   so that they can defend against the charge and not just deny that they have done anything

16   wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001); *Warshaw v. Xoma*

17   *Corp.*, 74 F.3d 955, 960 (9th Cir. 1996) ("a pleading is sufficient under Rule 9(b) if it

18   identifies the circumstances of the alleged fraud so that the defendant can prepare an adequate

19   answer."); *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) (plaintiff need only "set forth

20   what is false or misleading about a statement and why it is false").

21         Here, the Complaint without question gives fair notice of the alleged misconduct.

22   P&G knows the exact representations at issue (the Complaint reprints and attaches the

23   advertisements), and when and where they were made.  ¶4 ("Internet, in-store sampling, point

24   of sale displays, and on the Align® probiotic supplement's labels and labeling"); *see also* ¶21

25   ("The label on each package of Align® ...."); ¶23 (defendant "deceptively describes Align and

26   Bifantis® on its www.aligngi.com and www.bifantis.com websites"); ¶12 (defendant launched

27   retail sales of Align "[i]n March 2009"); ¶2 (the representations are ongoing, defendant

28   "continues to state ..." and "continues to advertise ...").  The Complaint also describes why

BLOOD HURST & O'REARDON, LLP

00025644

17

No. 10-CV-1974-BEN(CAB)

1   these allegations are likely to deceive the reasonable consumer. ¶1 (defendant "has no support

2   for these claims"); ¶3 ("In truth, the ingredient matrix found in Align has never been

3   substantiated clinically or otherwise…"). Mr. Rikos went so far as to research and cite to

4   several studies, including defendant's *own* studies, which show the false and deceptive

5   character of defendant's advertisements. ¶¶3, 14, 16-18, 29-39 (including citations to specific

6   studies published from 1999 through 2009).

7          In the face of the detailed complaint, P&G's argument that plaintiff's "vague

8   allegations" do not let it "know what advertisements are at issue in this action," is a bit of a

9   joke. To the extent that Rule 9 even applies, Mr. Rikos has met it.

10  **VIII.   Plaintiff States a Claim for Violation of Each Prong of the UCL**

11         "[T]he primary purpose of the unfair competition law … is to protect the public from

12  unscrupulous business practices." *Consumers Union of U.S., Inc. v. Alta-Dena Certified*

13  *Dairy,* 4 Cal. App. 4th 963, 975 (1992); *see also Tobacco II,* 46 Cal. 4th at 312. The UCL

14  imposes strict liability on anyone who violates its prohibitions and the "scope of the UCL is

15  quite broad." *McKell v. Washington Mutual, Inc.,* 142 Cal. App. 4th 1457, 1471 (2006); *see*

16  *also Cortez v. Purolator Air Filtration Products Co.,* 23 Cal. 4th 163, 181 (2000) (plaintiff

17  need not show that a UCL defendant intended to injure anyone by its deceitful or unfair

18  conduct). Because the statute is framed in the disjunctive, a business practice need only meet

19  one of the three criteria ("unlawful," "unfair" or "fraudulent") to violate the UCL. *McKell,*

20  142 Cal. App. 4th at 1471.

21         **A.     "Unfair" and "Fraudulent" Business Practices**

22         "A business practice is unfair within the meaning of the UCL if it violates established

23  public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to

24  consumers which outweighs its benefits." *McKell,* 142 Cal. App. 4th at 1473. The unfair

25  prong is "'intentionally broad, thus allowing courts maximum discretion to prohibit new

26  schemes to defraud.'" *Schnall v. Hertz Corp.,* 78 Cal. App. 4th 1144, 1166 (2000). As the

27  California Supreme Court emphasized: "'In permitting the restraining of all "unfair" business

28  practices,'" the UCL "'undeniably establishes only a wide standard to guide courts of

BLOOD HURST & O'REARDON, LLP

00025644

18

No. 10-CV-1974-BEN(CAB)

1    equity .... [G]iven the creative nature of the scheming mind, the Legislature evidently
2    concluded that a less inclusive standard would not be adequate.'" *Cel-Tech Communications,*
3    *Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 181 (1999).

4          To prove that a practice is "fraudulent" within the meaning of the UCL, one need not
5    prove the elements of the common law tort of fraud. *Tobacco II*, 46 Cal. 4th at 312. "Instead,
6    one need only show that 'members of the public are likely to be deceived.'" *Tobacco II*, 46
7    Cal. 4th at 312. A business practice is likely to deceive where "it is probable that a significant
8    portion of the general consuming public or of targeted consumers, acting reasonably in the
9    circumstances, could be misled." *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508
10   (2003). The determination of whether a practice is likely to deceive is a "question of fact,
11   requiring consideration and weighing of the evidence from both sides before it can be
12   resolved." *McKell*, 142 Cal. App. 4th at 1472.

13         P&G's only challenge to the unfair and unlawful prongs is to repeat its argument that
14   plaintiff does not allege that the advertising is false or deceptive and instead seeks to shift the
15   burden of proof to P&G. Def's Mem. at 17, 19-20. P&G's argument is wrong and should be
16   rejected as detailed in §IV above.

17         **B.    Unlawful Business Practices**

18         The UCL's unlawful prong is essentially an incorporate-by-reference provision. "By
19   proscribing 'any unlawful' business practice, 'Section 17200 "borrows" violations of other
20   laws and treats them as unlawful practices' that the unfair competition law makes
21   independently actionable." *Cel-Tech*, 20 Cal. 4th at 180. "With respect to the unlawful prong,
22   '[v]irtually any state, federal or local law can serve as the predicate for an action' under
23   section 17200." *People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515
24   (2002) (emphasis omitted).

25         First, P&G concedes that its alleged violation of California Health & Safety Code
26   §110765 is a predicate violation for purposes of the UCL's unlawful prong. Def's Mem. at 20.
27   On this basis alone, the motion to dismiss the UCL unlawful prong violation should be denied.

28

BLOOD HURST & O'REARDON, LLP

1   Second, P&G contends that its predicate violations of California's fraud and deceit

2   statutes should be alleged with additional specificity to comply with Rule 9(b). Def's Mem. at

3   21. P&G is wrong for the reasons stated in §VII.B above. Accordingly, plaintiff's predicate

4   violations based upon Civil Code §§1572, 1573, 1709, 1710, 1711 and 1770 stand.

5   Third, P&G wrongly contends that "common law claims cannot form the basis for a

6   UCL 'unlawful' claim." Def's Mem. at 21.[12] In *Korea Supply Co. v. Lockheed Martin Corp.*,

7   29 Cal. 4th 1134, 1159 (2003), the Supreme Court unequivocally affirmed that common law

8   violations are "unlawful" predicate acts for the UCL: "We conclude, therefore, that an act is

9   independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional,

10   statutory, regulatory, *common law*, or other determinable legal standard." Similarly, Courts of

11   Appeal have found that systematic breach of consumer contracts violate the UCL. *Smith v.*

12   *Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463, 1483 (2005); *State Farm Fire & Casualty*

13   *Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1104 (1996). *See also Sybersound Records, Inc.*

14   *v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2007) (breach of contract may form the predicate

15   for a UCL claim if the breach is unlawful, unfair or fraudulent). Here, P&G's systematic

16   breach of its warranties is a predicate violation for purposes of the UCL's unlawful prong.

17   Finally, P&G argues that the alleged violations of 21 U.S.C. §§321 and 343 cannot be

18   used as predicate violations because the Food, Drug and Cosmetic Act does not provide for a

19   private right of action. Def's Mem. at 20. P&G's district court citations do not account for or

20   correctly construe the California Supreme Court and Ninth Circuit precedents. "'By

21   proscribing any unlawful business practice, section 17200 borrows violations of other laws and

22   treats them as unlawful practices that the unfair competition law makes independently

23   actionable.'" *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000)

24

25   [12]   Its sole authority is an unpublished district court opinion, *Hartless v. Clorox Co.*, No.

26   06cv2705, 2007 U.S. Dist. LEXIS 81686, at 11 (S.D. Cal. Nov. 2, 2007). *Hartless* cannot be
followed in the face of published California Supreme Court and Court of Appeal decisions
holding that a violation of common law may be a predicate act for the UCL's unlawful prong.

27   *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940) (federal courts deciding a case
involving state law must follow the interpretation given by that state's court); *Sarausad v.*

28   *Porter*, 503 F.3d 822, 824 (9th Cir. 2007).

00025644

No. 10-CV-1974-BEN(CAB)

BLOOD HURST & O'REARDON, LLP

1  (citing *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163

2  (1999)). "It does not matter whether the underlying statute also provides for a private cause of

3  action; section 17200 can form the bases for a private cause of action even if the predicate

4  statute does not." *Id.*  The only limitation is when the underlying statute absolutely bars the

5  action or makes the conduct lawful. As stated by the California Supreme Court: "Acts that the

6  Legislature has determined to be lawful may not form the basis for an action under the unfair

7  competition law ...." *Cel-Tech*, 20 Cal. 4th at 183.  Here, the federal statutes at issue do not

8  make the challenged conduct lawful (in fact they prohibit it).  While the statutes do not provide

9  for private enforcement, they also do not prohibit enforcement if violation of the federal

10  provisions is also actionable under state consumer protection statutes. *See, e.g.*, *Chacanaca*,

11  2010 U.S. Dist. LEXIS 111981 at *33.

12  **IX.    Plaintiff Provided the CLRA Letter As Required**

13       The purpose of the CLRA notice requirement is to allow defendant 30 days to correct

14  or agree to correct the alleged CLRA violations to prevent liability for ***damages*** under the

15  CLRA.  Civil Code §1782(a). *See also Morgan*, 177 Cal. App. 4th at 1260-61.  Notification is

16  not required prior to filing a complaint seeking injunctive or other equitable relief under the

17  CLRA.  Civil Code §1782(d).  If the defendant does not rectify the CLRA violations after 30

18  days, plaintiff can amend his complaint to seek damages, in addition to the injunctive and

19  other equitable relief.  Civil Code §1782(d).

20       Plaintiff followed these procedures precisely.  The original complaint sought only

21  injunctive relief (*i.e.*, an order enjoining the wrongful acts, restitution and disgorgement). ¶59.

22  Along with the original complaint, plaintiff notified P&G by certified mail of the CLRA

23  violations, requested that they be rectified, and informed P&G that the complaint would be

24  amended to seek damages under the CLRA if it did not agree to correct the violations within

25  30 days. ¶¶58, 60.  When P&G failed to rectify or agree to rectify the problems after 30 days,

26  plaintiff added a claim for CLRA damages in his First Amended Complaint. ¶61.

27       P&G's only gripe is that the CLRA notice requirement also applies to restitution and

28  disgorgement because these are really claims for "monetary damages." Def's Mem. at 22-23.

BLOOD HURST & O'REARDON, LLP

1   P&G is wrong. The law is clear that the CLRA notice requirement is specific to legal

2   damages. Since restitution and disgorgement are forms of equitable relief, the Civil Code

3   §1782(a) notice requirement does not apply to them. *Kennedy v. Natural Balance Pet Foods,*

4   *Inc.*, No. 07-cv-1082 H (RBB), 2007 U.S. Dist. LEXIS 57766 at *8-*9 (S.D. Cal. Aug. 7,

5   2007); *Util. Consumers' Action Network v. Sprint Solutions, Inc.*, No. C07-cv-2231-W (RJB),

6   2008 U.S. Dist. LEXIS 34159 at *19 (S.D. Cal. Apr. 25, 2008).[13]

7   **X.   Plaintiff States a Claim for Breach of Express Warranty**

8          An express warranty is created when a seller makes an affirmation of fact or promise

9   about the goods, or provides a description of the goods, which is part of the basis of the

10  bargain. Cal. U. Com. Code §2313(1)(a) and (b); *Weinstat v. Dentsply International, Inc.*, 180

11  Cal. App. 4th 1213, 1227 (2010). The statements or description creating the warranty may

12  appear in any variety of forms, including in advertisements or brochures. *Weinstat*, 180 Cal.

13  App. 4th at 1225-1233 (warranty created by statements in product directions); *Fundin v.*

14  *Chicago Pneumatic Tool Co.*, 152 Cal. App. 3d 951, 957 (1984) (warranty can be created by

15  statements in sales brochure, in labels or advertising). "The 'whole purpose' of warranty law

16  is 'to determine what it is that the seller has in essence agreed to sell ....'" *Weinstat*, 180 Cal.

17  App. 4th at 1228 (citing Cal. U. Com. Code, §2313). The claim focuses on "***the seller's***

18  behavior and obligation – his or her affirmations, promises, and descriptions of the good – all

19  of which help define what the seller 'in essence' agreed to sell." *Id.* (emphasis in original).

20         P&G demonstrates its misunderstanding of an express warranty cause of action by

21  repeatedly asserting that the claim must fail because plaintiff does not "identify the specific

22  statements that he saw on the Align label that he allegedly relied on in purchasing the

23

24  _____

[13]    P&G is wrong that claims for CLRA damages are dismissed with prejudice if the

25  plaintiff does not strictly comply with Civil Code §1782(a) notice. Instead, the damage claims
    are dismissed without prejudice until 30 days after plaintiff complies with the notice

26  requirements. *Morgan*, 177 Cal. App. 4th at 1261 (disagreeing with federal district court cases
    that dismissed CLRA claims with prejudice); *Deitz v. Comcast Corp.*, No. C 06-06352 WHA,

27  2006 U.S. Dist. LEXIS 94333 at *15-*16 (N.D. Cal. Dec. 21, 2006); *Keilholtz v. Superior*
    *Fireplace Co.*, No. C 08-00836 CW, 2009 U.S. Dist. LEXIS 30732 at *7-*8 (N.D. Cal. Mar.

28  30, 2009).

BLOOD HURST & O'REARDON, LLP

1    product." Def's Mem. at 23.  *See id.* at 24 ("Plaintiff does not allege that he relied on the

2    terms of the warranty ....").

3        Reliance is not an element of a warranty claim.  "[B]reach of express warranty arises in

4    the context of contract formation in which reliance plays no role." *Weinstat*, 180 Cal. App. 4th

5    at 1230 (plaintiff did not receive product warranties until *after* the product was purchased and

6    delivered.  Nonetheless, "[t]he precise time when the words of description or affirmation are

7    made ... is not material.  The sole question is whether the language ... [is] fairly to be regarded

8    as part of the contract.")  Regardless, in this case, plaintiff read the affirmations and statements

9    on the product label and purchased the product in reliance thereon.

10       P&G's remaining arguments are equally misplaced.  It contends that "Plaintiff does not

11   allege the terms of the warranty."  Def's Mem. at 23.  Of course he does.  The label and

12   advertisements containing the warranties are reproduced in, and attached to, the Complaint.

13   On this very same issue in another probiotic case, Judge Miller wrote: "Contrary to

14   NextFoods' assertion, the complaint amply details NextFood's warranties regarding

15   GoodBelly products ....  The complaint contains pictures of GoodBelly products that clearly

16   state that GoodBelly 'Supports Healthy Digestion [and] Natural Immunity' and that

17   GoodBelly has 'Clinically Tested Live Cultures.'"  *Morey*, 2010 U.S. Dist. LEXIS 67990 at

18   *6.

19       P&G also argues that plaintiff does not allege how the warranty was breached.  The

20   warranty was breached because Align does not provide the digestive health benefits promised

21   and because P&G does not have the clinical and scientific proof that it claims to have.  ¶¶3, 14,

22   16-18, 29-30.  These allegations readily meet Rule 8 pleading standards.

23       Finally, P&G repeats its argument that plaintiff was not damaged because Align

24   worked as advertised and plaintiff received the benefit of his bargain.  Def's Mem. at 24.

25   Plaintiff's allegations (which must be taken as true) are that Align does not have the

26   scientifically proven digestive health benefits P&G touted, and therefore plaintiff paid for a

27   product that was not as advertised.  ¶¶10, 16-18, 29-39, 79.

28

BLOOD HURST & O'REARDON, LLP

00025644

**XI.    P&G'S Premature Arguments On Class Certification Are Irrelevant**

P&G prematurely asserts that plaintiff cannot pursue California claims on behalf of non-California class members because such persons lack sufficient contacts with California. Def's Mem. at 25. The choice of law question (if it turns out there is one) can be determined on plaintiff's motion for class certification when the class that plaintiff seeks to have certified is defined and on a factual record of P&G's conduct in California. *See Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 242-44 (2001); *Clothesrigger, Inc. v. GTE Corporation*, 191 Cal. App. 3d 605, 612-16 (1987); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-23 (9th Cir. 1998). *See also, Lockwood*, 597 F. Supp. 2d at 1035 (refusing to strike class allegations on defendant's argument that a class could not be certified as a matter of law. The court would consider the issues "on a fully-briefed and supported motion concerning class certification.").

**XII.    Conclusion**

For the foregoing reasons, P&G's Motion should be denied in its entirety. If, however, the Court dismisses any portion of the Complaint, plaintiff requests leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (the policy in favor of permitting amendment is to be applied with "extreme liberality.")

Respectfully submitted,

Dated: January 24, 2011

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)

By:          s/Leslie E. Hurst
LESLIE E. HURST

600 B Street, Suite 1550
San Diego, CA  92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

NICHOLAS & BUTLER, LLP
CRAIG M. NICHOLAS (178444)

00025644

ALEX M. TOMASEVIC (245598)
225 Broadway, 19th Floor
San Diego, CA 92101
Telephone: 619/325-0492
619/325-0496 (fax)
cnicholas@nblaw.org
atomasevic@nblaw.org

BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
ANDREW S. FRIEDMAN
ELAINE A. RYAN
PATRICIA N. SYVERSON (203111)
2901 N. Central Avenue, Suite 1000
Phoenix, AZ 85012-3311
Telephone: 602/274-1100
602/798-5860 (fax)
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

Attorneys for Plaintiff

BLOOD HURST & O'REARDON, LLP

CERTIFICATE OF SERVICE

     I hereby certify that on January 24, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

     I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 24, 2011.

s/Leslie E. Hurst<br>
LESLIE E. HURST<br>
<br>
BLOOD HURST & O'REARDON, LLP<br>
600 B Street, Suite 1550<br>
San Diego, CA  92101<br>
Telephone:  619/338-1100<br>
619/338-1101 (fax)<br>
lhurst@bholaw.com

BLOOD HURST & O'REARDON, LLP

No. 10-CV-1974-BEN(CAB)

00025644